DECLARATION OF SENIOR SPECIAL AGENT JAY DONALDSON

I, Jay Donaldson, being first duly sworn, hereby depose and state the following:

***Background of Declarant***

1. I am a Senior Special Agent with the United States Secret Service ("USSS") currently assigned to the Nashville Field Office. I have been a Special Agent since May 2005. As such, I have received training developed by the USSS specific to financial crimes. Among the federal crimes I have investigated include, but are not limited to, violations of 18 U.S.C. § 1343 (wire fraud) and 18 U.S.C. § 1956 (money laundering).

***Source of Information***

2. The statements contained within this declaration are based on information obtained through my personal observations, training and experience, information gathered during interviews of bank investigators and others, information provided by the account holder, discussions with law enforcement partners, and review of information from bank documents pertinent to this investigation. This declaration is made for the limited purpose of establishing probable cause to forfeit the funds identified herein. As such, this declaration does not necessarily include all the facts known to this investigation.

***Items sought for forfeiture***

3. I make this Declaration in support of a civil forfeiture complaint in rem seeking forfeiture of the following property:

   a. Content of Bank of Sierra Account #: 70214043 (BoS *4043) in the name of R.N., in the amount of $138,966.00

*Summary*

4. As explained in more detail below, based on my training, experience, and this investigation, there is probable cause to believe that BoS *4043 contains funds traceable to fraud. The account holder in control of the above-referenced account demonstrated, based on my training and experience, behavior typical of a "money mule" involved in a "romance scam" moving illegally obtained funds through the financial system.

*Facts*

### Tennessee Law Firm Victim of a Scam

5. On or about April 21, 2022, I received a telephone call from C.B., who identified herself as an associate with a firm practicing real estate law in the Middle District of Tennessee. C.B. advised that on or about Mach 25, 2022, her firm received an email purporting to be from a property seller, with whom the firm was conducting business. The email stated that a payoff statement was incorrect and a revised payoff statement would be subsequently faxed to the firm.

6. On or about March 29, 2022, the firm completed a wire totaling $195,055.25 using the updated payoff instructions faxed from the purported seller of the property.

7. On or about April 21, 2022, C.B. learned from fraud investigators with the firm's bank, Wilson Bank and Trust ("WB&T"), that the payoff was suspected as fraudulent because the funds were actually sent to an account with US Bank and not the firm's intended recipient bank.

### USSS Investigates the Fraud

8. On or about April 21, 2022, I talked with fraud investigators at WB&T who advised that their preliminary investigation indicated that subsequent to the transfer of funds to US Bank,

the money was split with a portion ($92,000) sent to Bank of America and a portion ($94,000) sent to an account with Wells Fargo in the name of R.N. Preliminary investigation also indicated that the funds sent to Bank of America were subsequently sent outside the United States.

9. On or about April 21, 2022, I contacted a representative of Wells Fargo who confirmed that an account under the name R.N. of Visalia, California, received a wire transfer for $94,018 from the US Bank account referenced above. Wells Fargo froze these funds under suspicion of fraud activity.

10. On or about April 22, 2022, I contacted a senior investigator at US Bank. The investigator advised that the US Bank account holder stated the funds were for the sale of a residence but was unable to provide the address of the residence. Further, the account holder did not know the name of the title company or real estate company used in the sale of the residence and was unable to produce any documents regarding the sale of the residence. The account holder stated that R.N. was a real estate agent who was working on purchasing a new residence on behalf of a client.

11. Records for the US Bank account showed an incoming wire transfer on March 29, 2022. The wire was from WB&T noting the subject law firm in Tennessee in the amount of $195,055.25.

12. On March 30, 2022, two cashier's checks were obtained from the US Bank account and issued to an account with Bank of America ($92,967) and Wells Fargo ($94,018), which was made payable to R.N.

13. A review of the Wells Fargo account in the name of R.N. showed an opening balance on March 31, 2022 of zero dollars followed by two deposits on this same date of $65,000

and $94,018 and an attempted, though subsequently returned, outgoing wire transfer of $20,000. On April 1, 2022, there was a deposit of $25,000 and a withdrawal of $45,000. In summary, between March 31, 2022, and April 5, 2022, the Wells Fargo account in the name of Rachael Nix had total deposits of $204,014.00 and total withdrawals of $65,048.00 for a net balance of $138,966.00, which was the ending balance in this account on April 25, 2022.

14. I know from training and experience that large deposits and withdrawals in a short time frame is an indication of money laundering and/or money mule activity. I also know, based upon my training and experience, that commingling of funds is a known way to illegal proceeds and make it more difficult for law enforcement to trace proceeds through the financial system. Therefore, I have probable cause to believe that the contents of the Wells Fargo account were involved in laundering the proceeds of fraud.

15. On or about May 11, 2022, I learned from conversations with WB&T fraud investigators that Wells Fargo released the entirety of the contents of the Wells Fargo account in the form of a cashier's check made payable to R.N. for $138,966.00. It was later learned in the investigation that Wells Fargo closed this account for suspected fraud activity.

### *Fraud Proceeds and Commingled Funds Traced to BoS *4043*

16. The $138,966.00 cashier's check from Wells Fargo was deposited in BoS *4043. On or about May 13, 2022, I contacted Bank of Sierra in Visalia, California, and advised of the facts learned from this investigation. Bank of Sierra froze the funds pending investigation.

17. On or about May 19, 2022, I received a telephone call from R.N. R.N. inquired about the freeze on her account. I advised R.N. that a preliminary investigation indicated that the account had received funds involved in a money laundering scheme. R.N. told me that she

believed these funds were to used to help a friend in Europe with a contract but could not provide further details and did not provide any information that would show the lawful nature of the funds.

***USS Interviews R.N.***

18. On or about June 23, 2022, special agents from the USSS Fresno Resident Office interviewed R.N. at her residence in Visalia, California. R.N. advised she created an account through OurTime.com, a senior dating application ("app") marketed to individuals fifty and older, in September 2021.

19. R.N. stated she that met Robert (Bob) Pollack, purporting to be from Germany, on the app. R.N. explained that Pollack and she communicated via email on the OurTime.com website, after which the two exchanged phone numbers and began communicating via phone calls and text messages. According to R.N., she maintained contact with Pollack, and they communicated every day via telephone. R.N. advised that Pollack has had multiple phone numbers with multiple area codes. I know, based on training and experience, that those engaged in fraud schemes typically change phone numbers frequently often using numbers generated on-line thereby disguising their true identity and/or location.

20. R.N. stated that in November 2021, she began receiving FedEx envelopes containing money from Pollack at her home address. R.N. advised that Pollack never communicated in advance of sending packages. R.N. noted that Pollack would raise this in casual phone conversation on the days she received a FedEx envelope and subsequently instruct her on handling and disposition of the funds. Pollack advised R.N. to open various bank accounts and deposit funds or send wire transfers for cryptocurrency exchange.

21. Based upon my training and experience, this activity is indicative of money mule activity. It is often the case that individuals, like R.N., meet people online through social media or dating apps for whom they agree to receive deposits or transfers of fund. In many cases these individuals develop a believed romantic or platonic relationship with the person they meet online. Money mules are typically called upon to receive packages of funds, open accounts, and transfer funds through various financial accounts. Often these individuals requesting the money mule assistance in receiving claim to be overseas, which is a cover for why they do not meet in person. Whether the money mule knows it or not, the funds they receive have been obtained by fraud and their activity is being used by bad actors to launder the money through the financial system. Usually when called upon to explain their banking activity money mules, like R.N., will not be able to give a cogent explanation.

22. R.N. opened a Wells Fargo bank account on March 31, 2022, under her name and home address. R.N. stated that she deposited a $45,000.00 cashier's check from Wells Fargo along with a $94,018.00 cashier's check from U.S. Bank, for a total of $138,966.00. R.N. advised that the Wells Fargo bank account was closed on May 24, 2022, for suspicious activity.

23. R.N. opened Bank of the Sierra *4043 on May 9, 2022, which was funded by the cashier's check from Wells Fargo for approximately $138,966.00.

24. R.N. advised that she is a retired bookkeeper and that her income is derived from Social Security. Based on my training and experience, the sums of money involved in various deposits are not consistent with an individual receiving only Social Security income.

25. After discussing this matter with agents, on or about June 23, 2022, R.N. executed a form surrendering the funds in Bank of Sierra *4043 to the custody of the United States. In this

form, R.N. acknowledges that the funds were used to facilitate fraud activity and she waived any claim to the funds. A copy of this form is attached hereto as Exhibit A.

26. Subsequently, Bank of Sierra issued a cashier's check payable to the U.S. Secret Service for $138,966.00. As of this writing, these funds remain in the custody of the United States.

## *Conclusion*

27. Based upon my training and experience, R.N.'s behavior and commingling of funds in various accounts is consistent with money laundering activity. Further, based on affiants training and experience, affiant knows that "money mules" are frequently recruited on social media/internet dating platforms and are sometimes unwitting participants in these money laundering schemes.

28. Based upon this investigation, my training and experience, there is probable cause to believe the contents of Bank of Sierra *4043 represent proceeds of wire fraud and property involved in money laundering activity. The transactions described above demonstrate probable cause that contents of Bank of Sierra *4043 were used to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity, namely wire fraud.

Executed this 13th day of September, 2022, at Nashville, Tennessee.

_____
Senior Special Agent Jay Donaldson
United States Secret Service